1  Jeremy V. Richards (CA Bar No. 102300)
   Jonathan J. Kim (CA Bar No. 180761)
2  Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, California  90067-4003
   Telephone: 310/277-6910
4  Facsimile:  310/201-0760
   E-mail:    jrichards@pszjlaw.com
5             jkim@pszjlaw.com

6  Attorneys for David Gottlieb, Chapter 11 Trustee

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10            SAN FERNANDO VALLEY DIVISION

11  In re:                          Case No.: 1:11-bk-10426-VK

12  GEORGES MARCIANO,               Chapter 11

13                      Debtor.     **NOTICE OF EMERGENCY MOTION AND
                                    EMERGENCY MOTION OF CHAPTER 11
14                                  TRUSTEE FOR (I) DETERMINATION
                                    THAT THE ESTATE INDIRECTLY OWNS
15                                  THE CRESCENT PROPERTY, MOUNTAIN
                                    PROPERTY, SUNSET PROPERTY, AND
16                                  LASKY PROPERTY AND (II)
                                    AUTHORIZATION TO OBTAIN AND PAY
17                                  FOR PROPERTY INSURANCE AND TO
                                    TAKE RELATED ACTIONS;
18                                  DECLARATIONS OF DAVID K.
                                    GOTTLIEB, ELLEN M. BENDER, LINDA F.
19                                  CANTOR AND JEREMY V. RICHARDS**

20                                  **Hearing**
                                    Date:   October 24, 2011
21                                  Time:   2:30 p.m.
                                    Place:  Courtroom 301
22
                                    [Emergency Hearing set pursuant to LBR 9075-
23                                  1]

24

25       **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES**

26  **BANKRUPTCY JUDGE, THE DEBTOR, AND PARTIES IN INTEREST AND THEIR**

27  **ATTORNEYS OF RECORD:**

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PLEASE TAKE NOTICE THAT, pursuant to Local Bankruptcy Rule 9075-1, the Court has set an emergency hearing on this motion (the "Motion") for Monday, October 24, 2011 at 2:30 p.m., in Courtroom 301 of the San Fernando Valley Division of the above entitled court, located at 21041 Burbank Boulevard, Woodland Hills, California, 91367.[1] Oppositions, if any, may be presented at the hearing.

By this Motion, David K. Gottlieb, Chapter 11 Trustee herein (the "Trustee"), moves the Court, on an emergency basis, for:

(i)      determinations that (a) the Georges Marciano Trust dated February 20, 1986, as such trust has, or may have been amended, modified, restated and/or superseded from time to time ("Marciano Trust"), is the sole member of each of 1000 Crescent LLC ("1000 Crescent"), 631 Mountain LLC ("631 Mountain"), and 9521 Sunset LLC ("9521 Sunset" and together with 1000 Crescent and 631 Mountain, the "LLCs"), which LLCs own the Crescent Property, the Mountain Property, and the Sunset Property (as such capitalized terms are defined below), respectively; (b) the Marciano Trust is the sole common stockholder and owner of Lasky Properties, Inc. ("Lasky" and together with the LLCs, the "Subject Entities"), which owns the Lasky Property (as said capitalized term is defined below); and (c) the Trustee, as representative of the Debtor's estate (the "Estate"), stands in the shoes of Marciano as trustee of the Marciano Trust and as the ultimate sole beneficial owner of the Subject Properties, and is empowered to control the Marciano Trust and exert control over Subject Entities and the Crescent Property, the Mountain Property, the Sunset Property and the Lasky Property (collectively, the "Subject Properties"); and

(ii)      authorization to obtain and pay for (with funds of the Estate) appropriate and necessary property and other insurance coverage, covering the Subject Properties ("Insurance Coverage"), and to take all other reasonable actions related to the Subject Properties in order to protect, preserve, secure and maintain the Subject Properties, in the Trustee's discretion.

The Trustee seeks the foregoing relief on an emergency basis, because the Trustee is informed and believes that insurance coverage for some or all of the Subject Properties has either

---

[1] Pursuant to Local Bankruptcy Rule 9075-1, the Trustee will file prior to or at the hearing on this Motion a declaration attesting to attempts to provide telephonic notice to the Debtor's bankruptcy counsel of the hearing on, and the substance of, the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  lapsed or will lapse shortly, thus putting at risk the Subject Properties in which the Estate is the

2  ultimate beneficial owner.  The Trustee needs immediate relief in order to protect said assets.

3  **FACTUAL BACKGROUND**

4  On October 27, 2009 (the "Petition Date"), Steven Chapnick, Joseph Fahs and Elizabeth

5  Tagle, (the "Petitioning Creditors") filed an involuntary petition for relief under chapter 11 of the

6  Bankruptcy Code.  The Court entered its Order for Relief on December 28, 2010.

7  On March 7, 2011, the Court entered its *Order Directing Appointment of Chapter 11 Trustee.*

8  On March 10, 2011, the Office of the United States Trustee filed an *Application for Order*

9  *Approving Appointment of Trustee and Fixing Bond*, seeking an order approving the appointment of

10  David Gottlieb as the Chapter 11 trustee in the above referenced case.

11  On March 11, 2011, this Court entered its *Order Approving Application for the Appointment*

12  *of Chapter 11 Trustee*.

13  Upon information and belief, the Marciano Trust is a revocable family trust for which

14  Marciano is the grantor and trustee.  A copy of the trust agreement and amendments thereto

15  governing the Marciano Trust (the "Trust Agreement") was previously filed with the Court as

16  Exhibits A, B and C to the Trustee's pending motion to revoke the revocable Marciano Trust and use

17  estate property [Docket No. 577].  For the convenience of the Court, another copy of the Trust

18  Agreement is attached hereto as **Exhibit A**.

19  Upon information and belief, 1000 Crescent is a California limited liability company formed

20  in or about January 2006.  A copy of the Limited Liability Company Operating Agreement of 1000

21  Crescent, dated January 12, 2006 (the "Crescent LLC Agreement"), is attached hereto as **Exhibit B**.

22  As set forth in the Crescent LLC Agreement, as of the formation of 1000 Crescent, the Marciano

23  Trust was the sole member of 1000 Crescent.[2]  *See* Crescent LLC Agreement, sections 1.26 & 3.1

24  and Schedule A.

25  Upon information and belief, the principal or primary asset of 1000 Crescent is certain

26  residential real property located at 1000 Crescent Drive, Beverly Hills, California, as more

27

28  _____

[2] Upon information and belief, Marciano was the sole manager of 1000 Crescent as of its formation.  *See* Crescent LLC Agreement, sec. 6.1.

1    particularly described in the legal description set forth in the Grant Deed dated January 24, 2006

2    (pursuant to which the Marciano Trust conveyed the Crescent Property to 1000 Crescent) attached

3    hereto as **Exhibit C** ("Crescent Grant Deed"). As noted on the Crescent Grant Deed, "Grantor and

4    Grantee in this conveyance are comprised of one and the same party, who continue to hold the same

5    proportionate interest in the property."

6          Upon information and belief, 631 Mountain is a California limited liability company formed

7    in or about October 2004. A copy of the Limited Liability Company Operating Agreement of 631

8    Mountain, dated as of October 20, 2004 (the "Mountain LLC Agreement"), is attached hereto as

9    **Exhibit D**. As set forth in the Mountain LLC Agreement, as of the formation of 631 Mountain, the

10   Marciano Trust was the sole member of 631 Mountain.[3] *See* Mountain LLC Agreement, sections

11   1.26 and 3.1 and Schedule A. *See also* **Exhibit E** (copies of consent certificates of action by the sole

12   member).

13         Upon information and belief, the principal or primary asset of 631 Mountain is certain

14   residential real property located at 631 Mountain Drive, Beverly Hills, California, as more

15   particularly described in the legal description set forth in the Grant Deed dated December 22, 2004

16   (pursuant to which the Mountain Property was conveyed to 631 Mountain), attached hereto as

17   **Exhibit F** ("Mountain Grant Deed").

18         Upon information and belief, 9521 Sunset is a California limited liability company formed in

19   or about March 2003. A copy of the Limited Liability Company Operating Agreement of 9521

20   Sunset, dated as of March 5, 2003 (the "Sunset LLC Agreement"), is attached hereto as **Exhibit G**.

21   As set forth in the Sunset LLC Agreement, as of the formation of 9521 Sunset, the Marciano Trust

22   was the sole member of 9521 Sunset.[4] *See* Sunset LLC Agreement, sections 1.26 and 3.1 and

23   Schedule A. *See also* **Exhibit H** (copy of the Membership Certificate for 9521 Sunset, executed

24   March 5, 2003); **Exhibit I** (copy of the Consent Certificate of Action by the Sole Member for the

25

26

27   [3] Upon information and belief, Marciano was the sole manager of 631 Mountain as of its formation. *See* Mountain LLC
     Agreement, sec. 6.1.

28   [4] Upon information and belief, Marciano was the sole manager of 9521 Sunset as of its formation. *See* Sunset LLC
     Agreement, sec. 6.1.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Organizational Meeting of the Sole Member of 9521 Sunset LLC, a California Limited Liability

2  Company).

3      Upon information and belief, the principal or primary asset of 9521 Sunset is certain

4  residential real property located at 9521 Sunset Boulevard, Beverly Hills, California, as more

5  particularly described in the legal description set forth in the Grant Deed dated March 17, 2003

6  (pursuant to which the Sunset Property was conveyed to 9521 Sunset), attached hereto as **Exhibit J**

7  ("Sunset Grant Deed").

8      Upon information and belief, Lasky is a California corporation for which the sole officer and

9  director is Marciano and the sole shareholder is the Marciano Trust. *See* Action by Written Consent

10  of the Sole Director of Lasky Properties, Inc. in Lieu of First Meeting executed by sole director,

11  Marciano (attached hereto as **Exhibit K**); Action by Written Consent of the Sole Shareholder of

12  Lasky Properties, Inc. in Lieu of First Meeting executed by sole shareholder, Marciano Trust

13  (attached as **Exhibit L**); Statement of Information filed with the Secretary of State of California on

14  February 16, 2006 by Lasky (attached as **Exhibit M**) (noting Marciano is CEO, Secretary and CFO,

15  and sole director of Lasky); Common Stock Certificate for Lasky, issued to Georges Marciano,

16  Trustee of the Georges Marciano Trust dated February 20, 1986, dated May 6, 1998 (attached as

17  **Exhibit N**).

18      Upon further information and belief, the principal or primary asset of Lasky is investment

19  real property (an apartment or condominium complex) located at 223 Lasky Drive, 9904-9912

20  Robbins Drive, and 9920-0022 Robbins Drive, in Beverly Hills, California, as more particularly

21  described in the legal description set forth in the Grant Deed dated April 22, 1998 (pursuant to which

22  the Lasky Property was conveyed to Lasky), attached as **Exhibit O** ("Lasky Grant Deed").

23      In August 2011, Milam, Knecht & Warner, LLP ("Milam"), an accounting firm that provided

24  and continues to provide accounting and advisory services to Marciano and his affiliates, produced

25  to the Trustee a document labeled as "GM Consolidated/Combinded [sic] Compilation and FMV

26  Analysis" ("Milam Produced Document") which shows the Subject Properties, while directly owned

27  by the applicable Subject Entity, as material assets of Marciano. A copy of the Milam Produced

28  Document is attached as part of **Exhibit Y** attached hereto. In the Trustee's deposition of Michael

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Milam, Mr. Milam explained that the Milam Produced Document was a supporting document

2  generated by Milam, based on information from Marciano, used as a basis for Mr. Milam's opinion

3  of Marciano's estimated net worth as of August 2009, as set forth in his Declaration executed on

4  August 2, 2009, filed in state court proceedings (a copy of the relevant portion of the Milam

5  deposition is attached as **Exhibit Y**).

6      As more fully set forth in the Declaration of Ellen M. Bender (the "Bender Declaration"),

7  and specifically, at paragraph 12 thereof, the Trustee has served two sets of requests for admission,

8  requests for production of documents and interrogatories on the Debtor and the Subject Entities,

9  primarily designed to elicit responses that would enable the Trustee to definitively determine the

10  ownership of the Subject Entities and the Subject Properties. Instead of providing direct, honest and

11  straightforward answers, in unverified responses, Marciano denied that he is still the ultimate

12  beneficial owner of the Subject Properties, but neither he nor the Subject Entities identified who the

13  ultimate beneficial owner(s) is/are, produced any documents evidencing any change of ownership or

14  otherwise provided any responses or documents that would shed any light on the present ultimate

15  beneficial owners of the Subject Properties, as required by the discovery propounded.

16      Additionally, as more fully set forth in the Declaration of Jeremy V. Richards (the "Richards

17  Declaration"), upon learning that documents subpoenaed from Lousina Hovsepian (the Debtor's

18  principal bookkeeper in the United States) were maintained at 1000 Crescent, the Trustee's counsel

19  asked counsel for the Debtor numerous times to answer simple questions regarding the basis upon

20  which the Debtor's books and records (property of the Estate which should have been turned over to

21  the Trustee) are being maintained at 1000 Crescent. As more fully set forth in the Richards

22  Declaration, the Debtor's counsel have consistently refused to provide such information (although

23  both of them also represent the Subject Entities, the record owners of the Subject Properties).

24      As more fully documented in the Declaration of Linda F. Cantor (the "Cantor Declaration"),

25  on October 20, 2011, Ms. Cantor and other representatives of the Trustee were present at 1000

26  Crescent in order to review certain documents being produced by Lousina Hovsepian ("Hovsepian")

27  pursuant to a Rule 2004 subpoena served on her. During the course of that review, and as more fully

28  set forth at paragraph 4 of the Cantor Declaration, Hovsepian informed Ms. Cantor that the insurance

1    policy for the Crescent Property would lapse by the end of the day on October 21, 2011 and that no

2    funds were available to pay the insurance premium.  Further, Mr. Reznick, counsel for the Debtor

3    (also present at the meeting) informed Ms. Cantor that GM Holdings and its related entities (who

4    have apparently been paying expenses relating to Marciano's residential and investment properties in

5    Beverly Hills) have no funds to pay utilities for the Crescent Property and other properties, and,

6    further, Mr. Reznick and Hovsepian informed Ms. Cantor that the property insurance premium for

7    the Lasky Property was due on October 28 and that no funds were currently available to pay the

8    insurance premium.

9                          **BASIS FOR RELIEF REQUESTED**

10            Based on the foregoing facts and circumstances, the Estate is the ultimate beneficial owner of

11   all of the valuable Subject Properties, through the Marciano Trust as the holder of the equity

12   interests in the Subject Entities.  The Estate stands to suffer great harm if the insurance coverage for

13   one, some or all of the Subject Properties lapses, exposing the Estate to a substantial risk of loss.  In

14   the best case, the insurance coverage for only one of the Subject Properties will have expired prior to

15   the hearing on this Motion; in the worst case, the insurance coverage for some or all of the remaining

16   Subject Properties may also lapse in the short term.  Moreover, given the apparent lack of funds of

17   the Marciano entities, or their apparent unwillingness to act prudently and appropriately, there is a

18   significant risk that the Subject Properties will not be adequately maintained and other expenses

19   (such as utility expenses) will not be timely paid.

20            Accordingly, in order to protect and preserve the interests of the Estate, out of an abundance

21   of caution, the Trustee seeks (i) Court determinations that the Marciano Trust, as the sole interest

22   holder of each of the Subject Entities, can exert control over the Subject Entities, and the Trustee, as

23   representative of the Estate, stands in the shoes of Marciano as trustee of the Marciano Trust and is

24   empowered to control the Subject Entities and consequently the Subject Properties, and in

25   connection therewith, (ii) authorization to obtain and pay for (with funds of the Estate[5]) appropriate

26   and necessary property and other insurance coverage, covering the Subject Properties, and to take all

27

28   _____
[5] The Trustee believes that there is sufficient cash of the Estate on hand, to pay for insurance coverage for the Crescent
Property in the short term and, if and to the extent necessary, for the other Subject Properties.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    other reasonable actions related to the Subject Properties in order to protect, preserve and maintain

2    the Subject Properties in the Trustee's discretion.  The Trustee seeks the foregoing relief on an

3    emergency basis in order to protect the Estate's indirect interests in the Subject Properties.

4         The Court has ample authority and discretion to provide the relief requested by the Trustee.

5    Section 363(b) (1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing,

6    may use, sell, or lease, other than in the ordinary course of business, property of the estate.  11

7    U.S.C. § 363(b)(1).  *See In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

8    A trustee's application of its sound business judgment in the use of property is subject to great

9    judicial deference.  *See, e.g., Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282,

10   289 (BAP 9th Cir. 2005) (trustee's position is afforded deference, "particularly where business

11   judgment is entailed in the analysis"); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 18 (BAP

12   9th Cir. 1988) (court has "considerable discretion. . . in light of sound business justification"); *In re*

13   *Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990).  Further, section 105(a) of the Bankruptcy Code

14   provides:  "The court may issue any order, process, or judgment that is necessary or appropriate to

15   carry out the provisions of this title."  11 U.S.C. § 105(a).

16        As discussed above, the Trustee has a reasonable basis to believe that the Estate has an

17   indirect interest in the Subject Properties (and thus the preservation and protection thereof) through

18   the Marciano Trust, which, based on information and belief, owns the equity interests in the Subject

19   Entities which own the Subject Properties.  Marciano has stated the Marciano Trust no longer owns

20   interests in the Subject Entities; however, notwithstanding the Trustee's repeated requests, Marciano

21   has provided no documents, information or evidence supporting such statements.  Provided only

22   with unsubstantiated, self-serving statements by Marciano (whom the Court has previously found

23   not to be a credible witness), the Trustee reasonably believes that the emergency relief requested by

24   this Motion is justified and critical to the protection of the Estate's interests.  *See also* Cal. Evid.

25   Code §§ 638 ("a person who exercises acts of ownership over property is presumed to be the owner

26   of it"), 662 ("The owner of legal title to property is presumed to be the owner of the full beneficial

27   title.  This presumption may be rebutted only by clear and convincing proof."); Fed.R.Evid. Rule

28   302 ("in civil actions and proceedings, the effect of a presumption respecting a fact which is an

1   element of a claim or defense as to which State law supplies the rule of decision is determined in

2   accordance with State law").

3        WHEREFORE, the Trustee requests the Court to grant this emergency Motion and provide

4   such other and further relief as may be just and appropriate.

5

6   Dated: October 21, 2011          PACHULSKI STANG ZIEHL & JONES LLP

7

8                                    By:    /s/
                                         Jeremy V. Richards (CA Bar No. 102300)

9
                                         Attorneys for David Gottlieb, Chapter 11
10                                        Trustee for Georges Marciano

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF DAVID K. GOTTLIEB

I, David K. Gottlieb, declare as follows:

1.     I am the duly appointed Chapter 11 Trustee in the above-captioned case, *In re Georges Marciano*. All capitalized terms contained herein are defined as set forth in the *Emergency Motion of Chapter 11 Trustee for (I) Determination that the Estate Indirectly Owns the Crescent Property, Mountain Property, Sunset Property, and Lasky Property and (II) Authorization to Obtain and Pay for Property Insurance and to Take Related Actions* (the "Motion").

2.     All facts set forth in this Declaration are based on either my personal knowledge, information supplied to me by my bankruptcy counsel, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), upon my review of relevant documents, or upon my opinion based upon my experience and knowledge of the circumstances as described in the Motion. If I were called to testify thereto, I could and would competently do so.

3.     Attached to the Motion as **Exhibit A** is the Trust Agreement for the Marciano Trust, which was previously filed with the Court as Exhibits A, B and C to the Trustee's pending motion to revoke the revocable Marciano Trust and use estate property [Docket No. 577].

4.     Attached to the Motion as **Exhibit B** is a copy of the Limited Liability Company Operating Agreement of 1000 Crescent, dated January 12, 2006.

5.     Attached to the Motion as **Exhibit C** is a copy of the Grant Deed dated January 24, 2006, pursuant to which the Marciano Trust conveyed the Crescent Property to 1000 Crescent.

6.     Attached to the Motion as **Exhibit D** is a copy of the Limited Liability Company Operating Agreement of 631 Mountain, dated as of October 20, 2004

7.     Attached to the Motion as **Exhibit E** is a copy of the Grant Deed dated December 22, 2004, pursuant to which the Mountain Property was conveyed to 631 Mountain.

8.     Attached to the Motion as **Exhibit F** are copies of the Consent Certificate of Action by the Sole Member for the Organizational Meeting of the Sole Member of 631 Mountain LLC, a California Limited Liability Company, and the Consent Certificate of Action by the Sole Member for the Meeting of the Sole Member of 631 Sunset LLC, a California Limited Liability Company dated as of October 19, 2004.

9.      Attached to the Motion as **Exhibit G** is a copy of the Limited Liability Company Operating Agreement of 9521 Sunset, dated as of March 5, 2003.

10.     Attached to the Motion as **Exhibit H** is a copy of the Membership Certificate for 9521 Sunset, executed March 5, 2003.

11.     Attached to the Motion as **Exhibit I** is a copy of the Consent Certificate of Action by the Sole Member for the Organizational Meeting of the Sole Member of 9521 Sunset LLC, a California Limited Liability Company.

12.     Attached to the Motion as **Exhibit J** is a copy of the Grant Deed dated March 17, 2003, pursuant to which the Sunset Property was conveyed to 9521 Sunset.

13.     Attached to the Motion as **Exhibit K** is the Action by Written Consent of the Sole Director of Lasky Properties, Inc. in Lieu of First Meeting executed by sole director, Marciano, dated April 14, 1998.

14.     Attached to the Motion as **Exhibit L** is the Action by Written Consent of the Sole Shareholder of Lasky Properties, Inc. in Lieu of First Meeting executed by sole shareholder, Marciano Trust, dated April 14, 1998.

15.     Attached to the Motion as **Exhibit M** is the Statement of Information filed with the Secretary of State of California on February 16, 2006 by Lasky.

16.     Attached to the Motion as **Exhibit N** is a copy of a common stock certificate for Lasky, issued to Georges Marciano, Trustee of the Georges Marciano Trust dated February 20, 1986, dated May 6, 1998.

17.     Attached to the Motion as **Exhibit O** is a copy of the Grant Deed dated April 22, 1998, pursuant to which the Lasky Property was conveyed to Lasky.

18.     I am informed and believe that the documents attached as Exhibits A through O were produced to the Trustee by (as applicable) Hochman, Salkin, Rettig, Toscher & Perez, P.C. and Rutter Hobbs & Davidoff, pursuant to Bankruptcy Rule 2004 orders entered by the Court in this case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    I declare under penalty of perjury that the foregoing is true and correct to the best of my

2  knowledge.

3    Executed this 21st day of October, 2011 at Los Angeles, California.

David K. Gottlieb

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF ELLEN M. BENDER**

I, Ellen M. Bender, declare as follows:

1.    I am an attorney at law, licensed to practice in the courts of this State and admitted to practice before this Court. I am a partner in the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ"), counsel of record in the above-captioned case for counsel for Plaintiff David Gottlieb, duly appointed Chapter 11 Trustee (the "Trustee" or "Plaintiff"). I make this Declaration in support of the Trustee's *Emergency Motion Of Chapter 11 Trustee For (I) Determination That The Estate Indirectly Owns The Crescent Property, Mountain Property, Sunset Property, And Lasky Property And (II) Authorization To Obtain And Pay For Property Insurance And To Take Related Actions* (the "Motion"). I have personal knowledge of the facts set forth herein, unless otherwise stated, and if called upon to testify to these facts, I could and would competently do so. All capitalized terms contained herein are defined as set forth in the Motion, unless otherwise indicated.

2.    On or about April 14, 2011, I caused to be filed on behalf of the Trustee the adversary complaint titled *David Gottlieb, Chapter 11 Trustee v. Georges Marciano, individually and as trustee of the Georges Marciano Trust dated February 20, 1986; 1000 Crescent LLC, a California limited liability corporation; 631 Mountain, LLC, a California limited liability corporation; 9521 Sunset LLC, a California limited liability corporation; and Lasky Properties, Inc.,* Adv. Case No. 11-01305-VK [Docket No. 1] (the "Adversary Complaint").

3.    Upon information and belief, the Crescent Property is 100% owned by Defendant 1000 Crescent LLC ("1000 Crescent"); the Mountain Property is 100% owned by Defendant 631 Mountain LLC ("631 Mountain"); the Sunset Property is 100% owned by Defendant 9521 Sunset LLC ("9521 Sunset"); and the Lasky Property is 100% owned by Defendant Lasky Properties, Inc. ("Lasky"). Upon information and belief, none of the Defendants dispute these facts.[1]

4.    The Adversary Complaint seeks a declaration which includes, among other things: (i) that the Georges Marciano Trust dated February 20, 1986, as that Trust has been amended or restated (the "Marciano Trust"), is the sole member of each of the LLC's and Lasky; (ii) that the Trustee has the power to revoke the Marciano Trust, which is, upon information and belief, a revocable family

---

[1]    1000 Crescent, 631 Mountain, and 9521 Sunset are sometimes collectively referred to hereafter as the "LLC's."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  trust for which Defendant Georges Marciano is the sole Trustee; (iii) upon revocation of the

2  Marciano Trust, the sole membership interest in each of the LLC's and all of the shares of Lasky

3  will become property of the Bankruptcy Estate over which the Trustee will exercise exclusive power

4  and control; and, based upon the foregoing, (iv) the Trustee has the power and authority to approve a

5  sale, transfer hypothecation or other disposition of the subject properties and to take all actions

6  necessary and appropriate to protect the subject properties as part of the Bankruptcy Estate.

7       5.     In response to the Adversary Complaint, the Defendants initially filed a Motion to

8  Dismiss [Docket No. 7] which remained pending before the Court until finally denied, on or about

9  August 29, 2011.  While such Motions to Dismiss were pending, I sought Defendants' cooperation

10  in conducting a discovery conference as required by Fed.R.Civ.Proc. 26(f) and requested that the

11  parties make their initial disclosures as required by Fed.R Civ.Proc. 26(a)(1).  However Defendants,

12  by and through counsel, refused to participate in a Rule 26(f) conference or make initial disclosures

13  while their Motion to Dismiss was pending.[2]

14       6.     Based upon the Defendants' refusal to cooperate with conducting Initial Disclosures

15  under Rule 26, the Trustee sought, and the Court issued, an Order allowing the Trustee to propound

16  discovery upon Defendants before Rule 26 Initial Disclosures had been made and before

17  Defendants' answers were to be filed (see Order issued by the Court [Docket No. 37]).  The Court

18  also ordered Defendants to participate in a Rule 26 Conference and provide Initial Disclosures as

19  required by the FRCP, FRBP, and the Court's rules.

20       7.     Thereafter, on behalf of the Trustee, I propounded written discovery upon each of the

21  Defendants, comprised of Requests for Admission ("RFA's"), Interrogatories ("First

22  Interrogatories"), and Requests for Production of Documents("First "RFP's").  Said initial discovery

23  requests were served upon Defendants on August 23, 2011.  The RFA's requested, among other

24  things, that: (i) each of the LLC's and Lasky admit they are the 100% owners of the properties at

25  issue herein; (ii) that the Marciano Trust is the sole member of each of the LLC's and the sole

26  shareholder of Lasky; and (iii) that the Marciano Trust is a revocable family trust for which

27

28  [2]  Specifically, Defendants' counsel indicated they would "go through the motions" of a Rule 26(f) conference but
would not provide any substantive disclosures as to their claims or defenses so long as their Motions to Dismiss
remained pending.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Defendant Marciano is the sole Trustee.  The First Interrogatories asked that for each denial of an

2   RFA, Defendants provide all facts, witnesses, and documents which support or otherwise evidence

3   such denials.  The First RFP's asked for all documents evidencing the same.  In addition, the First

4   RFP's asked the LLC's and Lasky to *produce all documents evidencing who holds all current title*

5   *and ownership in any and all of their assets,* which would include ownership of the membership

6   interests in the LLC's and ownership of Lasky's stock.

7        8.      On September 8, 2011, before Defendants' responses to this initial written discovery

8   were due, the parties conducted their Rule 26(f) Conference as ordered by the Court.  Both my

9   partner, Jeremy Richards, and I participated in the conference on behalf of the Trustee.  Daniel

10  McCarthy and Michael Reznick participated on behalf of the Defendants.  During the Rule 26(f)

11  conference, Mr. Richards and I attempted to engage Defendants' counsel in a discussion as to the

12  nature and basis for the Defendants' anticipated claims and defenses, as specifically required by

13  Fed.R.Civ.P. 26(f)(2).  Among other things, Mr. Richards expressly inquired of Messrs. McCarthy

14  and Reznick whether the Defendants would admit or deny that the LLC's and Lasky owned the

15  subject properties; and, if the latter, asked them to identify the current owners of the entities.  During

16  the Rule 26(f) Conference, Mr. McCarthy and Mr. Reznick refused to provide this information.

17  Their only response was that we would learn the answers when we received Defendants' discovery

18  responses.

19       9.      Thereafter, on or about August 31, 2011, Defendants filed their answer to the

20  Adversary Complaint [Doc No. 34].  In their Answer, Defendants Marciano and each of the LLC's

21  and Lasky expressly denied that the Marciano Trust was the sole member of the LLC's and the sole

22  shareholder of Lasky, but did admit that the properties were owned by the LLC's and Lasky.

23       10.     Defendants' denials in this regard were directly in conflict with the documents that

24  the Trustee possessed, including the title documents which indicated that the real properties, after

25  purchase, had been transferred by Marciano to the respective LLC's and Lasky; the Operating

26  Agreements and Articles of Organization for the LLC's, which showed the Marciano Trust as the

27  sole member and Marciano as managing member of each of the LLC's, and the Articles, Bylaws,

28  and other corporate governance documents for Lasky, which showed the Marciano Trust as the sole

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  shareholder and Marciano the sole officer of Lasky. In the Trustee's RFA's, the Trustee also

2  specifically requested that Defendants authenticate the genuineness of each of these corporate

3  documents.

4      11.    Following receipt of Defendants' Answers to the Adversary Complaint, on behalf of

5  the Trustee we propounded a Second Set of Interrogatories and a Second Set of RFP's to each of the

6  Defendants. These were short requests which asked that, for each denial of a material allegation of

7  the Complaint, including the Defendants' denial that the Marciano Trust was the sole member of

8  each of the LLC's and the sole shareholder of Lasky, Defendants provide (i) all facts to support such

9  denials, (ii) identify all witnesses with any knowledge of the same, and (iii) identify all documents

10  relating to such denials.

11      12.    Defendants served by mail purported responses to all of the Trustee's outstanding

12  written discovery which were received by my office on September 28, 2011. None of the written

13  responses was verified. None of the responses identified who Defendants contend holds the current

14  membership interests in the LLC's or ownership of the shares of Lasky. Defendants' responses

15  further ignored the Trustee's interrogatory asking them to identify all facts, witnesses, and

16  documents upon which they base their denial of ownership of the LLC interests and shares of Lasky.

17  None of the Defendants (which includes the LLC's and Lasky) produced any documents showing

18  who allegedly holds the current membership interests in the LLC's or any shares of Lasky. In fact,

19  the Defendants refused to produce a single document in response to the Trustee's two sets of RFP's.

20      13.    In addition, in their discovery responses Defendants refused to admit the genuineness

21  of any of the corporate and LLC organizational documents and property transfer documents attached

22  to the RFA's. None of the LLC's or Lasky, all allegedly California entities, or their counsel, Mr.

23  McCarthy, offered any explanation as to why they could not produce one document showing their

24  current ownership structure.

25      14.    At or about the same time that my office received the Defendants' discovery

26  responses described above, Messrs. McCarthy and Reznick withdrew as counsel for Defendants. In

27  their place, the firm of O'Melveny and Myers ("OMM") entered appearances on behalf of

28  Defendants purportedly pursuant to a power of attorney executed by Marciano. On September 30,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    2011, I sent a letter to Mr. Ben Logan of OMM advising him of the several outstanding discovery

2    disputes with regard to both the Defendants' obligations under Rule 26, and their responses to the

3    written discovery requests. Among other things, I specifically requested that Defendants, by and

4    through their new counsel, (1) supplement their Rule 26 Initial Disclosures to expressly include the

5    basis of their denial of ownership by the Marciano Trust of the LLC membership interests and

6    Lasky, and to tell us who they contend are the current owners of such interests; and (2) provide us

7    with supplemental responses to the Trustee's written discovery demands; which would include, in

8    particular, identifying who Defendants contend hold the current ownership interests. A true and

9    correct copy of said letter is attached to the Motion as **Exhibit P** and incorporated herein by

10    reference.

11        15.    In response to my letter, Mr. Logan sent an email advising me that OMM would soon

12    be designating someone to handle discovery matters on behalf of the Defendants. A true and correct

13    copy of said email from Mr. Logan is attached to the Motion as **Exhibit Q** and incorporated by

14    reference.

15        16.    On October 4, 2011, having heard nothing from Mr. Logan about the "discovery point

16    person" at OMM who would be prepared to respond to our discovery requests, I sent an email to Mr.

17    Logan requesting the identity of said person but also specifically requesting that he answer the

18    simple questions of who Defendants contend holds current ownership of each of the LCC's and

19    Lasky. I pointed out to Mr. Logan that the parties were obligated to submit a Joint Discovery Plan to

20    the Court within a few days and we needed this information to identify witnesses for the Joint

21    Discovery Plan. I asked that he provide this specific information for purposes of the Discovery Plan.

22    A true and correct copy of my email to Mr. Logan dated October 4, 2011 is attached to the Motion as

23    **Exhibit R** and incorporated by reference. I never received a response to that email.

24        17.    On Friday, October 7, I received an email from Mr. McCarthy advising me that

25    OMM was substituting out as Defendants' counsel and he would be substituting back in as

26    Defendants' counsel. He advised me that he would be sending comments to the draft Joint

27    Discovery Plan I had previously circulated, which was due to be filed on Monday, October 10, 2011.

28    In response to Mr. McCarthy's email, I emailed back and specifically asked, once again, that

1    Defendants identify (i) who they contend currently holds beneficial ownership of each of the LLC's

2    and Lasky, and (ii) when and how any such ownership interests were transferred. I advised Mr.

3    McCarthy that, not only were such answers required to adequately respond to the Trustee's written

4    discovery, but that Defendants were obligated to provide it in connection with the parties'

5    obligations to prepare and submit a meaningful Joint Discovery Plan which include identifying

6    witnesses. I asked Mr. McCarthy to provide the information by October 10th in order to include it in

7    the Joint Discovery Plan. A true and correct copy of Mr. McCarthy's and my email exchange on

8    that date is attached to the Motion as **Exhibit S** and incorporated by reference. Mr. McCarthy

9    declined to provide the requested information.

10        18.    Thereafter, On October 19, 2011, I prepared a further detailed "meet and confer"

11   letter to Mr. McCarthy setting forth all of the insufficiencies in the Defendants' discovery responses;

12   including, in particular, their failure in several respects to support their denial of ownership by the

13   Marciano Trust of the membership interests in the LLC's and Lasky and their refusal to produce any

14   documents showing who holds such ownership. A true and correct copy of said letter is attached to

15   the Motion as **Exhibit T** and incorporated herein by reference.

16        19.    In sum, the Trustee has made numerous attempts, both formal and informal, to obtain

17   the Defendants' cooperation in identifying who they contend owns the LLC's and Lasky. Such

18   requests have been made under Rule 26 in connection with Initial Disclosures, in connection with

19   attempts to prepare a Joint Discovery Plan, and in formal written discovery requests, all to no avail.

20   These requests have been made not only to Marciano, but specifically to the LLC's and Lasky, as

21   well as their counsel. All of these requests have been ignored and refused. The Trustee will bring

22   Motions to Compel shortly in respect to the written discovery; and has recently noticed the

23   depositions of each of the LLC's and Lasky pursuant to Fed. R.Civ.P. Rule 30(b)(6) as well as Mr.

24   Marciano, which are all scheduled for November. These depositions are necessitated by the

25   Defendants' ongoing refusal to confirm their beneficial ownership of the subject properties.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1        I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct and that this declaration was executed at Los Angeles, California on

3    October 21, 2011.

4                           Ellen M. Bender

5

6

7

8

9

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF LINDA F. CANTOR

I, Linda F. Cantor, declare as follows:

1.      I am an attorney at law duly authorized to practice before all of the courts of the State of California and am a partner at the law firm of Pachulski Stang Ziehl & Jones LLP, counsel of record herein to David K. Gottlieb, chapter 11 trustee (the "Trustee") for the estate of Georges Marciano, the debtor herein (the "Debtor"). I make this declaration in support of the Trustee's motion (the "Motion") for (i) determinations that the estate indirectly owns the Crescent Property, Mountain Property, Sunset Property and Lasky Property, and (ii) authorization to obtain and pay for property insurance and to take related actions. All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

2.      On October 20, 2011, I attended a document production held at 1000 N. Crescent Drive, Beverly Hills, California ("Crescent Drive"), a large Mediterranean style estate located north of Sunset Boulevard, pursuant to agreement of the parties relating to the *Order on Trustee's Motion for Production of Documents by Lousina Hovsepian Pursuant to Fed. R. Bankr. P. 2004 and LBR 2004-1* [Docket No. 542] (the "2004 Order"). Four professionals from Crowe Horwath, the Trustee's financial advisors, were also present at the document production.

3.      In addition to Lousina Hovsepian, George Lopez, identified as an executive assistant to the Debtor, was present, as well as Michael Reznick, the Debtor's counsel. Ms. Hovsepian and Mr. Reznick stated that the office was used for accounting purposes and that records for the Debtor, GM Holdings, GM Trust and the Committee to elect Georges Marciano were maintained there. Mr. Reznick said that the office was also used by him and his associate, Jennifer del Toro, for legal work on behalf of the Debtor.

4.      At the document production, Mr. Reznick and Ms. Hovsepian informed me that GM Holdings and its related entities (who have apparently been paying for expenses relating to the residential properties and the apartment building) had no funds available to pay property insurance for Crescent Drive ($45,000 annually) and that the insurance for the property would lapse by the end of the day on October 21, 2011 unless one quarter of the premium was paid. Mr. Reznick informed me that GM Holdings and its related entities had no funds to pay utilities for Crescent Drive or the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    other properties in Los Angeles, including the apartment building at Robbins Drive.  Mr. Reznick

2    and Ms. Hovsepian also informed me that the property insurance premium for the Robbins Drive

3    property was due on October 28th and that GM Holdings and its related entities had no ability to pay

4    that insurance premium.

5        I declare under penalty of perjury that the foregoing is true and correct to the best of my

6    knowledge.

7        Executed this 21st day of October, 2011 at Los Angeles, California.

8

9        _/s/  Linda F. Cantor_____
         Linda F. Cantor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JEREMY V. RICHARDS

I, Jeremy V. Richards, declare as follows:

1.     I am an attorney at law duly authorized to practice before all of the courts of the State of California.  I am a partner at the law firm of Pachulski Stang Ziehl & Jones LLP, counsel of record herein to David K. Gottlieb, chapter 11 trustee for Georges Marciano.  I make this declaration in support of that certain *Emergency Motion Of Chapter 11 Trustee For (I) Determination That The Estate Indirectly Owns The Crescent Property, Mountain Property, Sunset Property, And Lasky Property And (Ii) Authorization To Obtain And Pay For Property Insurance And To Take Related Actions* (the "Motion").  All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

2.     Attached to the Motion as **Exhibit U** is an e-mail string between myself and Mr. Michael Reznick, counsel for the Debtor, relating to, among other things, the production of documents by Hovsepian pursuant to a 2004 order served on her.  As can be seen at page 3 of the e-mail string (an e-mail to me from Mr. Reznick dated October 12, 2011 at 11:20 a.m.), Mr. Reznick indicated that responsive documents would be produced at 1000 Crescent, and confirmed to me in an e-mail dated October 13, 2011 at 7:32 a.m. (at page 2 of the e-mail string) that responsive documents were in fact "maintained at Crescent, and that is where Ms. Hovsepian is situated."

3.     In response to that e-mail, by e-mail dated October 13, 2011 and sent at approximately 8:49 a.m. (appearing at the bottom of page 1 and the top of page 2 of the e-mail string), I asked Mr. Reznick to identify on what basis Mr. Marciano is occupying 1000 Crescent.  Receiving no response, I sent two follow-up e-mails, later that day (at 4:53 p.m.) and the following day (October 14).

4.     In response to my two reminders, by e-mail sent at 3:34 p.m. on Friday, October 14, 2011 (at the very top of the e-mail string attached to the Motion as Exhibit U), Mr.  Reznick indicated that he was not prepared to answer my questions, if at all, without consulting with his co-counsel, Mr. McCarthy, and his client, Mr. Marciano.

5.     Having received no response, I sent a follow-up e-mail to Mr. Reznick on October 18, 2011, a true and correct copy of which is attached to the Motion as **Exhibit V** asking him whether he

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  had now had an opportunity to confer with his co-counsel and client regarding the ownership and

2  occupancy of 1000 Crescent.

3        6.       Mr. Reznick responded later that day, in an e-mail attached to the Motion as **Exhibit**

4  **W,** indicating that I would have to ask my questions "in discovery in the adversary proceeding

5  concerning the real properties and we will provide you with responses as the applicable rules

6  require."

7        7.       By e-mail sent to Mr. Reznick later that day, a true and correct copy of which is part

8  of the e-mail string attached to the Motion as **Exhibit W,** I reminded Mr. Reznick that we had

9  already served formal discovery designed to elicit the responses to my questions and had not

10 received adequate responses.

11       8.       I am informed and believe that on October 12, 2011, Mr. Marciano was deposed

12 under oath in connection with an involuntary bankruptcy proceeding filed against him, pending

13 before the Superior Court of Canada, Province of Quebec, District of Montreal (Case No. 500-11-

14 041322-112).  True and correct copies of the relevant pages of the deposition transcript are attached

15 to the Motion as **Exhibit X.**  At the deposition, Mr. Marciano stated that his residential address was

16 1000 Crescent North in Beverly Hills (pp. 20-21 and 30-33), and that he has multiple residences, of

17 which Crescent is one (p. 26).

18       9.       On September 27, 2011, I, on behalf of the Trustee, deposed Michael Milam of

19 Milam, Knecht & Warner, LLP ("Milam"), an accounting firm that provided and continues to

20 provide accounting and/or advisory services to Marciano and his affiliates, pursuant to the Court's

21 Bankruptcy Rule 2004 order.   During the deposition, Mr. Milam testified as to the circumstances of

22 the document produced to the Trustee, labeled as "GM Consolidated/Combinded [sic] Compilation

23 and FMV Analysis" ("Milam Produced Document"), which shows the Subject Properties, while

24 directly owned by the applicable Subject Entity, as assets of Marciano.  In the deposition, Mr. Milam

25 explained that the Milam Produced Document was a supporting document generated by Milam,

26 based on information from Marciano, used as a basis for Mr. Milam's opinion of Marciano's

27 estimated net worth as of August 2009, as set forth in his Declaration executed on August 2, 2009,

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    filed in state court proceedings.  A copy of the relevant portion of the Milam deposition transcript,

2    the Milam Produced Document, and other related documents is attached to the Motion as **Exhibit Y**.

3        I declare under penalty of perjury that the foregoing is true and correct to the best of my

4    knowledge.

5        Executed this 21st day of October, 2011 at Los Angeles, California.

6

7                                  */s/ Jeremy V. Richards*

                                      Jeremy V. Richards

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

# SEVENTEENTH AMENDMENT TO AND COMPLETE RESTATEMENT OF THE GEORGES MARCIANO TRUST

Prepared by:
Reish Luftman Reicher & Cohen
Attorneys at Law
11755 Wilshire Boulevard
10th Floor
Los Angeles, CA 90025-1539
(310) 478-5656

381874.1

## SEVENTEENTH AMENDMENT TO AND COMPLETE RESTATEMENT OF THE GEORGES MARCIANO TRUST

## TABLE OF CONTENTS

Page

ARTICLE 1    DECLARATIONS OF TRUST: .................................................................2

    1.1    Principal of Trust ..............................................................2
    1.2    Amendment of Original Trust ............................................2
    1.3    Acceptance of Trust by the Trustee....................................2

ARTICLE 2    RIGHTS RESERVED TO THE GRANTOR: ...............................2

    2.1    Power to Amend Trust ......................................................2
    2.2    Power to Revoke ...............................................................2
    2.3    Powers of Amendment and Revocation Personal to the Grantor ...............2
    2.4    Trust Irrevocable Upon the Death of the Grantor ...............2
    2.5    Additions ..........................................................................3

ARTICLE 3    ADMINISTRATION OF TRUST ESTATE DURING THE LIFE OF THE GRANTOR: ......................................................................3

    3.1    Accumulation of Income ...................................................3
    3.2    Distribution of Principal ...................................................3
    3.3    Support of the Grantor ......................................................3
    3.4    Support of Issue ................................................................3
    3.5    Incapacity of the Grantor ..................................................3
    3.6    Grantor Not To Be Placed in Nursing Home. .....................4
    3.7    Certain Transfers By Direction of Grantor During the Grantor's Lifetime ...........5

ARTICLE 4    DECLARATIONS CONCERNING FAMILY: .........................5

    4.1    Declarations Concerning Family ........................................5

ARTICLE 5    CREATION AND ADMINISTRATION OF ADMINISTRATIVE TRUST; DIVISION AND ALLOCATION OF TRUST ESTATE UPON THE DEATH OF THE GRANTOR: ......................................................................5

    5.1    Creation and Administration of Administrative Trust.............5
    5.2    Specific Distributions .......................................................6
    5.3    Division of Remaining Trust Estate ....................................6
    5.4    Distribution of Income ......................................................7
    5.5    Distribution of Principal ...................................................8
    5.6    Distribution Upon the Death of a Beneficiary......................9
    5.7    Contingent Beneficiaries ...................................................9
    5.8    Ultimate Residual Beneficiaries ........................................9

i

381874.1

ARTICLE 6   ADMINISTRATION OF RETIREMENT PLAN TRUSTS: ...........................................10

    6.1   Administration of Retirement Plan Trusts As Set Forth in This Article ..............10
    6.2   Qualified Retirement Plan ...........................................................................10
    6.3   Distributions During Life of Beneficiary ......................................................10
    6.4   Death Taxes ...............................................................................................10
    6.5   Not Liable for Debts, Expenses or Taxes of Other Trust Assets.....................10
    6.6   Withdrawals from Qualified Retirement Plan and Trustee's Discretion to
        Accelerate ..................................................................................................10
    6.7   Distribution upon Beneficiary's Death .........................................................11

ARTICLE 7   SUCCESSOR TRUSTEE: ...........................................................................11

    7.1   Designated Successor Trustee ......................................................................11
    7.2   Special Provisions Regarding Non-Resident Fiduciaries................................11
    7.3   Power to Designate a Successor Trustee .......................................................12
    7.4   Right of Trustee to Resign...........................................................................12
    7.5   Declination of a Named Successor Trustee ...................................................13
    7.6   Substitution of Corporate Trustee ................................................................13
    7.7   Effect of Succession of Trustees ..................................................................14
    7.8   Powers and Authorities of Successor Trustee ...............................................14
    7.9   No Duty of Successor Trustees to Investigate...............................................14
    7.10  Indemnification of Trustee ..........................................................................14

ARTICLE 8   POWERS OF TRUSTEE: ............................................................................14

    8.1   Powers of Trustee.......................................................................................14
    8.2   Power to Act as Owner ...............................................................................15
    8.3   Investment Powers .....................................................................................15
    8.4   Power to Retain or Abandon Property...........................................................16
    8.5   Management Powers ...................................................................................16
    8.6   Reimbursement of Trustee ..........................................................................17
    8.7   Power to Employ ........................................................................................17
    8.8   Installment Payments of Income ..................................................................17
    8.9   Segregation and Distribution of Assets ........................................................17
    8.10  Trust Distributions......................................................................................18
    8.11  Powers of Trustee In the Event of Beneficiary Misconduct............................18
    8.12  Prohibition Against Beneficiary's Transfer of Interest in Trust Prior to
        Receipt; or Use of Trust as Collateral for Loan .............................................20
    8.13  Principal and Income...................................................................................20
    8.14  Acceptance of Gifts....................................................................................21
    8.15  Powers Over Securities ...............................................................................21
    8.16  Transactions With Other Entities .................................................................21
    8.17  Power to Purchase Insurance .......................................................................22
    8.18  Payments to or for Minors or Incapacitated Persons......................................22
    8.19  Life Insurance and Other Death Benefits......................................................22
    8.20  Banks and Brokerage Accounts and Endorsements .......................................23
    8.21  Option to Terminate Shares or Trusts ..........................................................24
    8.22  Power to Combine and Divide Trusts ...........................................................24
    8.23  Power to Withhold Distribution ...................................................................25
    8.24  Tax Elections.............................................................................................25
    8.25  Powers in Event of Disputes .......................................................................25

381874.1

| 8.26 | Subdivision of Real Property | 25 |
| 8.27 | Purchase at Foreclosure | 26 |
| 8.28 | Fiduciary Related Party Transactions | 26 |
| 8.29 | Power to Commence, Retain and Manage Closely Held Business | 26 |
| 8.30 | Power Regarding S Corporations | 27 |
| 8.31 | Intellectual Property Rights and Powers. | 28 |
| 8.32 | Power Regarding Names of Trusts | 28 |
| 8.33 | Power to Transfer Trust to or from Another Jurisdiction | 28 |
| 8.34 | Power to Initiate and Defend Litigation; Power to Compromise Claims. | 28 |
| 8.35 | Powers in Connection with Government Agencies | 29 |
| 8.36 | Environmental Matters | 29 |
| 8.37 | Discretion of Trustee | 32 |
| 8.38 | Power to Disclaim, Restrict or Enlarge Powers of Trustee | 32 |
| 8.39 | Investigation Into Possible Misappropriation by Miriam Choi or Any Other Person Suspected of Misappropriation of Funds from the Grantor | 32 |
| 8.40 | Disclosure to Third Parties | 32 |

**ARTICLE 9    TRUST ADMINISTRATION:** ........................................................................33

| 9.1 | Trust Administrative Provisions Set Forth in This Article | 33 |
| 9.2 | Bond of Trustee | 33 |
| 9.3 | Compensation of Trustee | 33 |
| 9.4 | Profits and Losses Charged to Trust | 33 |
| 9.5 | Accrued and Undistributed Income | 33 |
| 9.6 | Payments Upon the Death of the Grantor | 33 |
| 9.7 | Allocation of Payments to Trusts | 34 |
| 9.8 | Death Taxes; Apportionment | 34 |
| 9.9 | Payment of Expenses | 36 |
| 9.10 | Disbursements in Good Faith | 37 |
| 9.11 | Liability for Conduct of Co-Trustees, Predecessor Trustees and Successor Trustees | 37 |
| 9.12 | Accounting | 37 |
| 9.13 | Notification to Beneficiaries | 37 |
| 9.14 | Subjection of Assets to Probate | 38 |

**ARTICLE 10    PROVISIONS REGARDING GST TAX:** .......................................................38

| 10.1 | Intention Regarding GST Tax | 38 |
| 10.2 | Duties Regarding Allocation of GST Exemption | 38 |
| 10.3 | Creation of Separate Trusts Based Upon Inclusion Ratio | 38 |
| 10.4 | Power to Grant and Revoke General Testamentary Power of Appointment | 38 |
| 10.5 | Powers and Duties Regarding Payment of GST Tax Liability | 39 |
| 10.6 | General Powers Regarding GST Tax and Other Considerations | 39 |
| 10.7 | Successor Trustee for Certain Purposes | 40 |
| 10.8 | Exoneration of Trustee | 40 |
| 10.9 | Simultaneous Death | 40 |

**ARTICLE 11    DEFINITIONS AND RULES OF CONSTRUCTION:** .................................41

| 11.1 | Definitions Set Forth in This Article | 41 |
| 11.2 | Beneficiary | 41 |

381874.1

| 11.3 | Corporate Trustee | 41 |
| 11.4 | Education | 41 |
| 11.5 | Gender or Number | 41 |
| 11.6 | Incapacity. | 41 |
| 11.7 | Internal Revenue Code. | 41 |
| 11.8 | Issue; Child; Children. | 42 |
| 11.9 | Net Income | 42 |
| 11.10 | Or. | 42 |
| 11.11 | Spouse | 42 |
| 11.12 | Support, Maintenance and Health | 42 |
| 11.13 | Survival | 42 |
| 11.14 | Trust | 42 |
| 11.15 | Trustee. | 42 |
| 11.16 | Trust Estate. | 42 |

**ARTICLE 12    GENERAL TRUST PROVISIONS:** .......... 42

| 12.1 | Termination | 42 |
| 12.2 | Spendthrift Provision | 43 |
| 12.3 | Incontestability | 43 |
| 12.4 | Disinheritance for Assertion of Claims | 44 |
| 12.5 | Costs of Defense Charged Against Contestant | 45 |
| 12.6 | Invalidity | 45 |
| 12.7 | Governing Law | 45 |
| 12.8 | Disclaimers. | 45 |
| 12.9 | Headings and Captions | 46 |
| 12.10 | Cross-References | 46 |
| 12.11 | Notices. | 46 |

**ARTICLE 13    EXECUTION:** .......... 46

| 13.1 | Declaration of the Grantor. | 46 |
| 13.2 | Execution by the Grantor | 47 |
| 13.3 | Execution by the Trustee. | 47 |

381874.1

## SEVENTEENTH AMENDMENT TO AND COMPLETE RESTATEMENT
## OF THE GEORGES MARCIANO TRUST

This SEVENTEENTH AMENDMENT TO AND COMPLETE RESTATEMENT OF THE GEORGES MARCIANO TRUST (the "Trust" or "Trust Agreement") is entered into between GEORGES MARCIANO (hereinafter called "Grantor") and GEORGES MARCIANO (hereinafter called "Trustee") effective as of the date of execution, with reference to the following facts:

A.    On February 20, 1986, the Grantor and Trustee executed the Georges Marciano Trust ("Original Trust").

B.    Prior to November 26, 2002, the Grantor and Trustee executed several amendments to/restatements of the Georges Marciano Trust, all of which were superseded by the Seventh Complete Restatement of the Georges Marciano Trust, executed by the Grantor and Trustee on November 26, 2002 ("Seventh Amendment").

C.    On September 19, 2003, the Grantor and Trustee executed the Eighth Complete Restatement the Georges Marciano Trust ("Eighth Amendment").

D.    On November 6, 2003, the Grantor and Trustee executed the Ninth Amendment to the Georges Marciano Trust ("Ninth Amendment").

E.    On November 7, 2003, the Grantor and Trustee executed the Tenth Amendment to the Georges Marciano Trust ("Tenth Amendment").

F.    On July 8, 2004, the Grantor and Trustee executed the Eleventh Amendment to the Georges Marciano Trust ("Eleventh Amendment").

G.    On July 22, 2005, the Grantor and Trustee executed the Twelfth Amendment to and Complete Restatement of the Georges Marciano Trust ("Twelfth Amendment").

H.    On February 1, 2006, the Grantor and Trustee executed the Thirteenth Amendment to the Georges Marciano Trust ("Thirteenth Amendment").

I.    On February 3, 2006, the Grantor and Trustee executed the Fourteenth Amendment to the Georges Marciano Trust ("Fourteenth Amendment").

J.    On February 9, 2006, the Grantor and Trustee executed the Fifteenth Amendment to the Georges Marciano Trust ("Fifteenth Amendment").

K.    On October 31, 2006, the Grantor and Trustee executed the Sixteenth Amendment to and Complete Restatement of the Georges Marciano Trust ("Sixteenth Amendment").

L.    Pursuant to Paragraph 2.1 of the Sixteenth Amendment, the Grantor reserved the right to amend the Original Trust during his lifetime.

The Grantor now desires to amend and restate the Original Trust, as amended, in its entirety as provided herein.

381874.1

## ARTICLE 1

<u>DECLARATIONS OF TRUST:</u>

      1.1   <u>Principal of Trust</u>.  The Grantor declares that the Grantor has set aside, transferred and delivered to the Trustee assets of the Grantor, subject to any liabilities secured thereby, the receipt of which is hereby acknowledged by the Trustee.  The Grantor may also transfer substantial additional property to this Trust by lifetime or testamentary transfer.  The initial principal of the Trust, together with any other property that is transferred to the Trust and any income thereon, shall be held, administered and distributed by the Trustee as provided herein.

      1.2   <u>Amendment of Original Trust</u>.  The Original Trust, as previously amended, is hereby amended in its entirety by replacing the Original Trust, as previously amended, with the following provisions of this Trust Agreement.  The Trust shall for all purposes continue to be designated by reference to the date of execution of the Original Trust as follows:  the "Georges Marciano Trust, dated February 20, 1986."

      1.3   <u>Acceptance of Trust by the Trustee</u>.  No consideration was or will be given to or by the Trustee for the conveyance or transfer to it of any of the Trust Estate.  The Trustee accepts title to the Trust Estate which is conveyed or transferred to it hereunder, without liability or responsibility for the conditions or validity of that title.  The Trust Estate has been or will be conveyed or transferred to the Trustee, in trust, with power of sale, for the uses and purposes and upon the terms herein set forth.  The Trustee agrees to perform the duties of the Trustee and to hold the Trust Estate, the proceeds thereof, and any other property which may be later added to the Trust Estate, subject to the terms of this Trust Agreement.

## ARTICLE 2

<u>RIGHTS RESERVED TO THE GRANTOR:</u>

      2.1   <u>Power to Amend Trust</u>.  At any time or times during the life of the Grantor, the Grantor, by written notice filed with the Trustee, may change the interest of any Beneficiary in any Trust created or to be created pursuant to this Trust Agreement or any amendment to it, or amend any provision of this Trust Agreement or any amendment to it.

      2.2   <u>Power to Revoke</u>.  During the life of the Grantor, the Grantor may revoke this Trust by giving written notice to the Trustee.  On revocation, the Trustee shall promptly deliver to the Grantor all of the Trust Estate.  If, after a revocation of the Trust by the Grantor, the Trustee has not distributed all of the Trust Estate prior to the death of the Grantor for whatever reason, the Trustee shall retain bare legal title to the Trust Estate.  Upon the death of the Grantor, the Trust Estate shall not be distributed in accordance with this Trust Agreement, but shall instead be distributed as designated by the Grantor in a Will or other written document executed concurrently with or after the date of revocation, or in the absence of such designation, shall be distributed to the Grantor's estate.

      2.3   <u>Powers of Amendment and Revocation Personal to the Grantor</u>.  The powers of the Grantor to amend this Trust Agreement and to revoke this Trust are personal to the Grantor and shall not be exercisable on the Grantor's behalf by any conservator or other person.

      2.4   <u>Trust Irrevocable Upon the Death of the Grantor</u>.  Upon the death of the Grantor, the Trust created by this Trust Agreement shall become irrevocable and not subject to amendment or alteration in any respect.

2.5    <u>Additions</u>.  The Grantor shall have the right, at any time or times, to add to the Trust Estate, and the property so added to the Trust Estate, whether real, personal or mixed, shall, after notice to the Trustee, be subject to all the terms of this Trust Agreement.  Any other person may, from time to time, with the consent of the Trustee, add property of any kind to the Trust Estate, or any part thereof, which shall be subject to all the terms and provisions of this Trust Agreement.

ARTICLE 3

## ADMINISTRATION OF TRUST ESTATE
## DURING THE LIFE OF THE GRANTOR:

3.1    <u>Accumulation of Income</u>.  So long as the Grantor is living, the Trustee shall accumulate all of the net income of the Trust Estate.  Such accumulated income shall become principal of the Trust Estate, to be distributed as hereinafter set forth.

3.2    <u>Distribution of Principal</u>.  Upon the request of the Grantor, the Trustee shall distribute and deliver to the Grantor so much of the principal of the Trust Estate as is demanded by the Grantor.  This power of the Grantor may be exercised by a power of attorney executed by the Grantor, if specific reference is made to this provision of this Trust Agreement, and only to the extent thereto and, in such event, such principal shall be distributed to the holder of such power of attorney.

3.3    <u>Support of the Grantor</u>.  In addition to the distributions from the Trust Estate set forth in the preceding Paragraphs of this Article, it shall be the discretionary duty of the Trustee to distribute to or apply for the use and benefit of the Grantor, from time to time, such reasonable amounts from the principal of the Trust Estate as the Trustee may deem necessary or advisable for the proper and reasonable support, maintenance and health of the Grantor, in accordance with the Grantor's then accustomed manner of living.

3.4    <u>Support of Issue</u>.  During the lifetime of the Grantor, the Trustee may distribute to or apply for the benefit of the issue of the Grantor such sums out of the principal of the Trust Estate as the Trustee deems necessary for the proper support, maintenance, health and education of any one or more of them.  In making any distributions of principal to or for any issue of the Grantor under this Paragraph, the Trustee shall take into consideration, to the extent the Trustees deems advisable, any income or other resources of such issue, outside of the Trust Estate, known to the Trustee and reasonably available for those purposes.  In exercising this discretionary power, the Trustee is advised to be mindful that the Grantor's primary concern in establishing this Trust is the adequate support of the Grantor during the Grantor's lifetime.  Any distribution or application of benefits to or for any issue of the Grantor under this Paragraph shall be charged against the Trust Estate as a whole rather than against the ultimate distributive share of the issue (or such issue's lineal ancestors or lineal descendants) to whom or for whose benefit the distribution is made.

3.5    <u>Incapacity of the Grantor</u>.  If at any time, as evidenced in writing by two (2) licensed physicians upon the request of any beneficiary or any successor Trustee, the Grantor has become substantially unable to manage the Grantor's own financial resources or resist fraud or undue influence (hereafter to be referred to as the Grantor's "Incapacity"), whether or not a court of competent jurisdiction has declared the Grantor incapacitated, mentally ill or in need of a conservator or the guardian of the person or estate, this Paragraph 3.5 shall apply.

(a)    <u>Limitation on Persons Able to Request a Determination of Incapacity</u>.  Notwithstanding any provision in this Paragraph 3.5 to the contrary, only a beneficiary or a named successor Trustee hereunder may request a determination of Incapacity pursuant to the provisions of this

Case 1:11-bk-10426-VK   Doc 577   Filed 10/03/11   Entered 10/03/11 14:14:21   Desc
Main Document     Page 25 of 29

Paragraph 3.5. Specifically, no creditor of the Grantor, nor any person who may have a claim against the Trust Estate, nor any person who may otherwise qualify as an interested person as provided under California Probate Code Section 48 shall have the right to request a determination of Incapacity of the Grantor pursuant to the provisions of this Paragraph 3.5.

(b)     Cooperation of the Grantor and Health Care Agent. The Grantor hereby directs any holder of an Advance Health Care Directive, including a durable power of attorney for health care decisions, reasonably to cooperate with the successor Trustee (in the case of the determination of the Incapacity of the Grantor) or the then-serving Trustee (in the case of a determination that the Grantor has regained the Grantor's capacity, as evidenced in writing by two (2) licensed physicians [hereafter to be referred to as the Grantor's "Capacity"]). The Grantor agrees reasonably to cooperate with the successor Trustee (in the case of a determination of the Incapacity of the Grantor) to undergo an evaluation by one (1) or more physicians and/or independent experts to determine Incapacity or Capacity, at reasonable times and reasonable intervals, as appropriate. The Grantor and the successor Trustee shall reasonably cooperate in the selection of the physician(s) and/or independent expert(s).

(c)     Release in Connection with Determination of the Grantor's Incapacity and/or Capacity. For purposes of determining the Grantor's Incapacity (or for determining the Grantor's Capacity after the Grantor has been determined to be Incapacitated), all individually identifiable health information, including medical records, may be released to the beneficiary and/or successor Trustee (even if that person has not yet been appointed to serve as Trustee) who requested such determination of the Grantor's Incapacity (or, in the case of determining the Grantor's Capacity after the Grantor has been determined to be Incapacitated, such information may be released to the then-serving Trustee hereunder), to include any written opinion relating to the Grantor's Incapacity or Capacity, as appropriate. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act of 1996, 42 USC 1320d and 45 CFR 160-164.

(d)     Support of the Grantor During Period of Incapacity of the Grantor. At any time that the Grantor has been determined to be Incapacitated, the Trustee shall, from time to time, apply for the benefit of the Grantor, from the Trust Estate, the amounts of net income and principal necessary, in the discretion of the Trustee, for the proper and reasonable support, maintenance and health of the Grantor in accordance with the Grantor's then accustomed manner of living, until the Grantor has regained Capacity, or until the death of the Grantor. Any income in excess of the amounts applied for the benefit of the Grantor shall be accumulated and added to the principal of the Trust Estate. If a conservator of the estate is appointed for the Grantor, the Trustee shall take into account any distributions made for the Grantor's benefit by the conservator.

(e)     Continued Support of Persons Previously Supported by the Grantor. If the Grantor is determined to be Incapacitated, the Trustee may also pay from the Trust Estate to any person (A) whom the Grantor is legally obligated to support or (B) who is related to the Grantor by blood, marriage or adoption and whom the Grantor was supporting at the time that the Grantor became Incapacitated, such sums as shall be reasonably necessary for such person's education, support in such person's accustomed manner of living and such person's medical, dental, hospital and nursing expenses and expenses of invalidism.

3.6     Grantor Not To Be Placed in Nursing Home. Except as provided in the last sentence of this Paragraph, it is the Grantor's intention that the Grantor not be placed in a nursing home, convalescent home or other similar facility without the Grantor's informed consent. If at any time the Grantor is incapable of giving his informed consent, then, to the extent possible, the Trustee shall use Trust income and, if insufficient, Trust principal for the purpose of providing nursing care for the Grantor in the Grantor's own home. To the extent such payments are from Trust principal, they shall be paid in

the manner described in the Paragraph titled "Incapacity of the Grantor" above. In the event that there are special circumstances in which the Trustee decides that a nursing home, convalescent home or other similar facility would provide substantially better medical care for the Grantor than the Grantor would receive in the Grantor's own home, and only if these special and unusual circumstances exist, the Trustee may choose to use Trust funds to provide for the Grantor's care in a nursing home, convalescent home or other similar facility of the highest quality. In making these decisions, the Trustee shall consult, to the extent the Trustee deems necessary, with the Grantor's health care agent and/or conservator.

    3.7    Certain Transfers By Direction of Grantor During the Grantor's Lifetime.   The Grantor intends that certain transfers pursuant to the Grantor's written instruction should be treated as a withdrawal of property from the Trust followed by a transfer by the Grantor to the Grantor or other parties, in accordance with such written instruction.   For example, in the case of a transfer that is intended to be a gift from the Grantor to any person, the Trustee shall execute any and all documents required to vest title to the gift property in the name of the transferee, without first retitling such assets in the name of the Grantor.   The intent of the Grantor is to avoid the expense and delay of multiple retitling, without changing the character of the transfer as being, in substance, a withdrawal of property from the Trust, followed by a transfer by the Grantor.   Accordingly, such transfer is intended to be and shall be treated for all purposes as first a distribution of the property to the Grantor followed by a gift transfer of the property to the donee(s) by the Grantor as donor, acting individually or through one or more attorneys in fact.

ARTICLE 4

<u>DECLARATIONS CONCERNING FAMILY:</u>

    4.1    <u>Declarations Concerning Family.</u>   The Grantor is presently unmarried.   The Grantor was previously married to MELINDA LONG, which marriage was terminated by divorce.   The Grantor has intentionally omitted to provide for MELINDA LONG under the terms of this Trust Agreement.   The Grantor was previously married to MEGAN MARCIANO, which marriage was terminated by divorce.   The Grantor has intentionally omitted to provide for MEGAN MARCIANO under the terms of this Trust Agreement. The Grantor believes that he has four (4) living children, namely MATTHEW MARCIANO, born April 4, 1987; SCOTT MARCIANO, born August 26, 1988; KEVIN MARCIANO, born November 11, 1991; and CHLOE MARCIANO, born November 22, 1994. No other individual shall be deemed to be a child of the Grantor unless he or she proves by DNA evidence to a 99% or greater certainty to be the biological child of the Grantor. The Grantor is a permanent resident of the County of Los Angeles, State of California.

ARTICLE 5

<u>CREATION AND ADMINISTRATION OF
ADMINISTRATIVE TRUST; DIVISION
AND ALLOCATION OF TRUST ESTATE
UPON THE DEATH OF THE GRANTOR:</u>

    5.1    <u>Creation and Administration of Administrative Trust.</u>   Upon the death of the Grantor, the Trust Estate, including any additions thereto by reason of the death of the Grantor, may thereafter be held as an "Administrative Trust." The Trustee may (a) make all of the payments required by the Paragraph titled "Payments Upon the Death of the Grantor," (b) pay all expenses relating to the Administrative Trust and (c) distribute the balance of the Administrative Trust (the "Balance") as provided in the remaining provisions of this Article. The Trustee may distribute the Balance in a single distribution or in a series of partial distributions.   If distribution of the Balance is to be made to one or

more Beneficiaries, then until full distribution has been made to any such Beneficiary, the Trustee of the Administrative Trust may pay to that Beneficiary (or to a Trust to be established for such Beneficiary pursuant to the terms hereof) such amounts of income and/or principal as are consistent with the terms hereof. Such payments shall be in lieu of and thus credited toward the income and/or principal remaining to be distributed to such Beneficiary (or to the Trust to be established for such Beneficiary pursuant to the terms hereof). No payment shall be made to any Beneficiary (or to a Trust to be established for such Beneficiary pursuant to the terms hereof) which exceeds the amount of income and/or principal then remaining to be distributed to such Beneficiary (or Trust) as provided herein, nor shall any payment of income and/or principal be made to any Beneficiary of any such Trust which exceeds the amount which might properly be distributed to such Beneficiary at that time under the terms of such Trust. The Administrative Trust shall be deemed to be terminated when all of the assets of the Administrative Trust have been used to pay expenses or allocated or distributed as provided in this Article, except for a reasonable amount which is set aside for the payment of unascertained or contingent liabilities and expenses (excluding any claim by a Beneficiary in his or her capacity as such).

The Grantor directs that, except for the gift and loan items set forth in Paragraph 5.2 below, that the Trustee inventory and sell all non-cash assets within twelve (12) months of the date of the Grantor's death, including the contents of any vault that the Grantor may have possession of at the time of his death. Any items that the Grantor owns that have little or no value, such as clothing or personal effects, shall be donated to a charity or charities selected by the Trustee.

     5.2   <u>Specific Distributions</u>. As soon as reasonably practicable after the death of the Grantor, the Trustee shall make the following specific distributions from the Trust Estate, outright and free of trust and free of all Death Taxes:

     (a)   The Trustee shall return to each child of the Grantor any gift that such child had made to the Grantor.

     (b)   The Trustee shall forgive any loan to a child of the Grantor that remains unpaid at the date of the Grantor's death.

     5.3   <u>Division of Remaining Trust Estate</u>. As soon as reasonably practicable after the death of the Grantor and after distributions, if any, pursuant to the provisions of Paragraph 5.2 and further subject to the remaining provisions of this Paragraph, the Trustee shall divide the remaining Trust Estate as follows:

     (a)   Forty percent (40%) thereof shall be allocated to CHLOE MARCIANO, to be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If CHLOE MARCIANO fails to survive the Grantor, this share shall be allocated into subshares for the issue of CHLOE MARCIANO, by right of representation, and each such share shall be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If CHLOE MARCIANO fails to survive the Grantor and leaves no issue then living, then this share shall be allocated pro-rata to the other shares created under this Paragraph 5.3.

     (b)   Forty percent (40%) thereof shall be allocated to KEVIN MARCIANO, to be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If KEVIN MARCIANO fails to survive the Grantor, this share shall be allocated into subshares for the issue of KEVIN MARCIANO, by right of representation, and each such share shall be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If KEVIN MARCIANO fails to survive the Grantor and leaves no issue then living, then this share shall be allocated pro-rata to the other shares created under this Paragraph 5.3.

Page 6, SEVENTEENTH AMENDMENT TO AND COMPLETE
RESTATEMENT OF THE GEORGES MARCIANO TRUST

381874.1

   (c) Ten percent (10%) thereof shall be allocated to MATTHEW MARCIANO, to be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If MATTHEW MARCIANO fails to survive the Grantor, this share shall be allocated into subshares for the issue of MATTHEW MARCIANO, by right of representation, and each such share shall be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If MATTHEW MARCIANO fails to survive the Grantor and leaves no issue then living, then this share shall be allocated pro-rata to the other shares created under this Paragraph 5.3.

   (d) Ten percent (10%) thereof shall be allocated to SCOTT MARCIANO, to be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If SCOTT MARCIANO fails to survive the Grantor, this share shall be allocated into subshares for the issue of SCOTT MARCIANO, by right of representation, and each such share shall be held, administered and distributed in trust pursuant to the remaining provisions of this Article 5. If SCOTT MARCIANO fails to survive the Grantor and leaves no issue then living, then this share shall be allocated pro-rata to the other shares created under this Paragraph 5.3.

With respect to any benefits of a Qualified Retirement Plan (as hereafter defined in the Article titled "Administration of Retirement Plan Trusts ") to be allocated to the Trust Estate, such benefits shall be specifically allocated among the Beneficiaries of the Trust Estate (determined pursuant to this Paragraph in accordance with the foregoing principles set forth in this Paragraph). The share of such benefits allocated to each Beneficiary of the Trust Estate shall be held by the Qualified Retirement Plan administrator as a separate account in accordance with the Article titled "Administration of Retirement Plan Trusts."

   5.4 <u>Distribution of Income</u>. Subject to the remaining provisions of this Article, the net income of a Trust created hereunder shall be distributed to or applied for the use and benefit of the respective Beneficiary who is age twenty-one (21) or older thereof in monthly or other convenient installments, but not less frequently than quarter-annually. The distribution of net income to each Beneficiary who is at least age 21 but not yet age 25 shall be limited to the lesser of ten percent (10%) of the net income or Two Hundred Fifty Thousand Dollars ($250,000) per annum. The distribution of net income to each Beneficiary who is at least age 25 but not yet age 27 shall be limited to the lesser of twenty percent (20%) of the net income or Five Hundred Thousand Dollars ($500,000) per annum. The distribution of net income to each Beneficiary who is at least age 27 but not yet age 30 shall be limited to the lesser of twenty-five percent (25%) of the net income or Five Hundred Thousand Dollars ($500,000) per annum. The distribution of net income to each Beneficiary who is age 30 or older shall not be subject to a dollar limitation. In calculating the net income limitation set forth hereinabove, the Trustee shall reduce the amount to be distributed from this Trust by the amount of net income distributed to said Beneficiary from other Trusts created by the Grantor, including, but not limited to, all Children's Trust(s), Insurance Trust(s), and/or any revocable Living Trust(s). In addition to the annual distributions, the Trustee shall distribute to a Beneficiary upon high school graduation the sum of Twenty Thousand Dollars ($20,000) from the net income of the Beneficiary's Trust. The specified dollar amount designated to be distributed or referenced in this Paragraph shall be increased by the same percentage as the percentage increase in the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index for all urban consumers (Los Angeles-Long Beach-Anaheim Metropolitan Area, Series A, 1982 = 100) (hereinafter "CPI") between the CPI last published in 2007 and the CPI last published prior to the date of the distribution. In the event that, at any applicable date hereafter, the CPI shall not exist in the same format as it now exists, then the Trustee shall, using the same period for comparison, substitute the official index if there is one, published by the Bureau of Labor Statistics, or similar or successor governmental agency, which shall be most nearly equivalent to the CPI. If no such index exists, then the Trustee shall use other reasonable means to determine any increase in the cost of living between the latter

of the date of this Trust or any amendment to it and the relevant distribution date and the amount to be distributed shall be adjusted accordingly.

5.5    Distribution of Principal.    Until complete distribution pursuant to the provisions of this Paragraph, the Trustee may distribute to or apply for the benefit of each Beneficiary or that Beneficiary's issue, out of the principal of that Beneficiary's Trust, those sums as the Trustee, in the Trustee's discretion, considers necessary for the proper support, maintenance, health and education of any one or more of that Beneficiary or that Beneficiary's issue. If a Beneficiary desires to purchase a home or start a business, the Trustee may distribute to or apply for the benefit of such Beneficiary, those sums as the Trustee, in the Trustee's discretion, (i) considers necessary to permit a Beneficiary to purchase or furnish a personal residence, such amount not to exceed Two Million Dollars ($2,000,000), or (ii) to permit a Beneficiary, who has reached the age of twenty-one (21), to purchase, initiate or invest in a business, which the Trustee personally deems to be sound or promising, even though said business might be the type of investment in which, because of its risk, the Trustee would not or could not invest the Trust Estate, such amount not to exceed One Million Dollars ($1,000,000); the Trustee may distribute additional funds to such Beneficiary in an amount not to exceed One Million Dollars ($1,000,000) on a semi-annual basis for additional investments in such business. In making any such distribution, the Trustee shall take into consideration, to the extent the Trustee considers advisable, any income or other resources of the Beneficiary or that Beneficiary's issue, as appropriate, outside of any Trust created pursuant to this Trust Agreement known to the Trustee and reasonably available for those purposes; provided, however, that no portion of the amount or amounts so distributed may be used to discharge any obligation of a parent of such issue to support any of those issue. Any distribution or application of benefits to or for any issue of a Beneficiary under this Paragraph shall be charged against that Beneficiary's Trust as a whole, rather than against any potential ultimate distributive share of the issue (or such issue's lineal ancestors or lineal descendants) to whom or for whose benefit the distribution is made. When any Beneficiary shall attain the following ages, the Trustee shall distribute to that Beneficiary the following portion of the principal of that Beneficiary's Trust:

| Age | Portion of Trust to Be Distributed |
|---|---|
| Thirty (30) years | 20% of the balance of the Trust |
| Thirty-five (35) years | 20% of the balance of the Trust |
| Forty (40) years | The balance of the Trust, together with any undistributed income therefrom |

If any Beneficiary has already reached any one or more of those ages upon the death of the Grantor or at any later time when the Trust for such Beneficiary is created, the Trustee shall distribute to that Beneficiary that portion or all of that Beneficiary's Trust based on the age or ages set forth above and reached by that Beneficiary at that time. The Trustee shall determine that portion of the Beneficiary's Trust to distribute by treating the Beneficiary as first reaching the first age level mentioned above and then, if applicable, proceeding to the next age level (and subsequent levels, if appropriate).

It is the Grantor's intent that once a Beneficiary has attained the age of eighteen (18) years, the Trustee shall encourage the Beneficiary to obtain the legal assistance of counsel to prepare a Will and other appropriate estate planning documents and shall alert such Beneficiary that he or she should execute a prenuptial agreement prior to marriage.

The specified dollar amounts designated to be distributed or referenced in this Paragraph shall be increased by the same percentage as the percentage increase between the CPI last published in 2006 and the CPI last published prior to the date of the distribution. In the event that, at any applicable date

hereafter; the CPI shall not exist in the same format as it now exists, then the Trustee shall, using the same period for comparison, substitute the official index if there is one, published by the Bureau of Labor Statistics, or similar or successor governmental agency, which shall be most nearly equivalent to the CPI. If no such index exists, then the Trustee shall use other reasonable means to determine any increase in the cost of living between the latter of the date of this Trust or any amendment to it and the relevant distribution date and the amount to be distributed shall be adjusted accordingly.

     5.6    <u>Distribution Upon the Death of a Beneficiary</u>.  Upon the death of a Beneficiary, the undistributed balance of that Beneficiary's Trust shall be allocated into separate Trusts among the issue of that deceased Beneficiary, with allocation to be made among such issue by right of representation.  If there is no then-living issue of that deceased Beneficiary, the deceased Beneficiary's Trust shall be divided into shares and/or subshares for the then-living issue of that deceased Beneficiary's nearest ancestor not more remote than the Grantor (provided any such issue is a lineal descendant of the Grantor), with allocation to be made among such issue by right of representation.  Any share so established for either (a) the issue of that deceased Beneficiary or (b) the issue of that deceased Beneficiary's nearest ancestor not more remote than the Grantor (provided any such issue is a lineal descendant of the Grantor) shall be held in trust and distributed in accordance with this Article. However, if any part of that deceased Beneficiary's Trust would otherwise be held in trust for a Beneficiary for whose benefit a Trust is already then being administered under this Trust Agreement, that part shall instead be added to that Trust and shall thereafter be administered according to its terms, except that, if that Trust provides for distribution in installments and if that Beneficiary has received a fractional distribution of that Trust pursuant to its terms, then there shall be distributed to that Beneficiary, free of trust, a fraction of that part equal to the fraction of that Beneficiary's interest previously distributed to that Beneficiary.

     5.7    <u>Contingent Beneficiaries</u>.  If at the time of the death of the Grantor, or at any later time before full distribution of the Trust Estate, no other disposition of the Trust Estate is directed by this Trust Agreement, the Trust Estate, or the portion of it then remaining, shall be distributed, outright and free of trust, to the Grantor's brother ARMAND MARCIANO, if he is then living.  If ARMAND MARCIANO is not then living, the Trust Estate, or the portion of it then remaining, shall be distributed, outright and free of trust, to the then living issue of ARMAND MARCIANO, by right of representation. If ARMAND MARCIANO is not then living and leaves no living issue, the Trust Estate, or the portion of it then remaining, shall be held in trust for the benefit of SIMON MARCIANO and CAMILLE COHEN MARCIANO, parents of the Grantor ("Parents' Trust"), provided that at least one of them is then living, otherwise to be distributed pursuant to Paragraph 5.8 below.  The Trustee shall make distributions from the Parents' Trust in the amounts that the Trustee, in the Trustee's discretion, considers necessary for the proper health, support, and maintenance of SIMON MARCIANO and CAMILLE COHEN MARCIANO, or the survivor of them.  Upon the death of the survivor of SIMON MARCIANO and CAMILLE COHEN MARCIANO, the remaining balance of the Parents' Trust, if any, shall be distributed pursuant to Paragraph 5.8 below.

     5.8    <u>Ultimate Residual Beneficiaries</u>.  If at the time of the death of the Grantor, or at any later time before full distribution of the Trust Estate, no other disposition of the Trust Estate is directed by this Trust Agreement, the Trust Estate, or the portion of it then remaining, shall be distributed, outright and free of trust, to those persons who would then be the heirs of the Grantor, their identities and respective shares to be determined as though their respective deaths had occurred at that time, in accordance with the laws of the state of California then in effect relating to the succession of separate property not acquired from a predeceased spouse or ancestor. For purposes of determining the Grantor's heirs, MAURICE MARCIANO and PAUL MARCIANO, and any and all issue of MAURICE MARCIANO and PAUL MARCIANO, shall be treated as having predeceased the Grantor and shall not receive any portion of the Trust Estate.

ARTICLE 6

ADMINISTRATION OF RETIREMENT PLAN TRUSTS:

    6.1    Administration of Retirement Plan Trusts As Set Forth in This Article. Notwithstanding anything in this Trust Agreement to the contrary, if the Trust created under this Trust Agreement or any other Trust created hereunder is named as the beneficiary of the Grantor's Qualified Retirement Plan (as defined below), there shall be created for a Beneficiary hereunder a separate subshare or subtrust from that Beneficiary's share or Trust, as the case may be (the Beneficiary's "Primary Trust"), which subshare or subtrust shall receive the benefits directly from the Qualified Retirement Plan on behalf of that Beneficiary. The amount allocated to each Beneficiary shall be determined under the provisions of the designated Trust created under this Trust Agreement. Each Beneficiary's separate subtrust created from that Beneficiary's Primary Trust shall be referred to as the "[ Name of Beneficiary ] Retirement Plan Trust." Each Beneficiary's Retirement Plan Trust may be further divided into an "Exempt Trust" and a "Nonexempt Trust," as provided in the Paragraph titled "Creation of Separate Trusts Based Upon Inclusion Ratio." Each Beneficiary's Retirement Plan Trust shall be administered and distributed in accordance with the provisions of this Article.

    6.2    Qualified Retirement Plan. The term "Qualified Retirement Plan" refers to any employee benefit plan or individual retirement arrangement that is allowed to accumulate any part of its earnings on an income tax deferred basis under the Internal Revenue Code, including by way of example and not limitation, plans described under sections 401, 403, 408, 408A and 457 of the Internal Revenue Code. A Qualified Retirement Plan includes a plan that is reasonably believed to qualify under one or more sections of the Internal Revenue Code, even if it is subsequently determined that such plan does not so qualify.

    6.3    Distributions During Life of Beneficiary. During the life of the Beneficiary, the Trustee shall distribute each year to or for the benefit of the Beneficiary from the Beneficiary's Retirement Plan Trust all amounts distributed from the Qualified Retirement Plan to the Beneficiary's Retirement Plan Trust in that year (net of expenses), but disregarding distributions taken by the Trustee from the Qualified Retirement Plan to the extent applied to pay Death Taxes and GST taxes (if any) and income taxes thereon paid in accordance with the Paragraph titled "Death Taxes," below. During the life of the Beneficiary, no distributions may be made to anyone other than the Beneficiary in accordance with such Beneficiary's Retirement Plan Trust.

    6.4    Death Taxes. The Trustee may pay Death Taxes and GST taxes (if any) attributed to the Qualified Retirement Plan allocated to the Beneficiary's Retirement Plan Trust out of other assets allocated to a Trust for the benefit of the Beneficiary or from funds received by the Trustee from the Beneficiary. To the extent the Death Taxes and GST taxes (if any) attributed to the Qualified Retirement Plan are not paid out of other assets, the Trustee shall pay such Death Taxes and GST taxes (if any) and a reasonable allowance for income tax payable by the Trustee thereon out of distributions from the Qualified Retirement Plan.

    6.5    Not Liable for Debts, Expenses or Taxes of Other Trust Assets. Notwithstanding anything in this Trust Agreement to the contrary, any benefit under a Qualified Retirement Plan payable to a Beneficiary's Retirement Plan Trust shall not be used to pay any debts, expenses and/or taxes of the Grantor or of any other Trust created under this Trust Agreement.

    6.6    Withdrawals from Qualified Retirement Plan and Trustee's Discretion to Accelerate. Each year, the Trustee shall withdraw from the Qualified Retirement Plan, the minimum required distribution under Section 401(a)(9) of the Internal Revenue Code and the Treasury Regulations